[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: RETURN OF CHILD TO CONNECTICUT
In this case, the defendant mother, before the filing of the divorce, left the state with her five year old and moved to Missouri. Her brother resides there and she has secured a fairly well-paying job. The father resides in this state and runs a business. The grandparents also live in the area and have a loving relationship with the child. The plaintiff father has moved the court that the mother be ordered to return to New London. He will provide her with a place to live, will consent to have her act as primary caretaker and obey any restraining orders directed to him by the court. The mother opposes the plaintiff's request. A hearing was held regarding this matter at short calendar.
This is an extremely difficult matter to decide and has caused the court a great deal of concern. First let it be said that there is absolutely no excuse for the mother, after having moved to Missouri, not having let the husband and his parents know that the child was safe and at least having phone contact with the child. Since it is important for the child's welfare and future development to have a close and loving relationship with the father, the mother's actions in this regard and her insensitivity to this factor raise some concern to the court. Furthermore, the court believes the father is deeply attached to his child and does not, in any way, conclude that the father has been abusive to this child. It is also true, that at the hearing on this matter, various troubling factors were brought out CT Page 16078 wherein the father alleged that the mother might have serious problems regarding her ability to exercise a parenting role. Any such conclusions are, of course, premature since the evidence has not been developed, and counsel has not been appointed for the child. Suffice it to say these factors are of importance since they give credence to the father's position that visitation and even custody will be hotly disputed and that, if his accusations are believed, a court may consider it reasonable that custody should not be with the mother. The court is not suggesting at this time such a result is probable or even appropriate — it is only saying that serious issues have been raised in this regard that will have to be litigated and the father's concern is a real one that he will be unfairly prejudiced regarding any future custody award, if the mother is allowed to stay in Missouri.
However, the fact remains that the court, on the brief testimony it heard, concludes that the mother has been subjected to serious physical abuse. A cousin of the defendant testified, and the court found him to be a credible witness, that he saw the effects of a September beating that the defendant wife claimed she was subjected to by the father.
The court has seen pictures taken shortly after the incident and they support the defendant wife's story that she was subjected to a repeated closed fist attack. The court cannot accept the plaintiff's explanation as to how the injuries occurred tripping over furniture, falling down the stairs.
It is hard to imagine anything more destructive than a child's emotional health than to witness such incidents and the resulting flight of the defendant out of state is humanly understandable as well as her distrust of the efficiency of restraining orders which have proved ineffective for her in the past.
On the other hand, serious issues remain as to whom custody will ultimately be awarded.
The court cannot work out a solution that, in an ideal sense, is "fair" or "just" to both parties. The court will try to decide the matter in a way that takes the child's best interest as the determinative factor and hopes its decision will do as little damage to the child's welfare as possible and the rights of the respective parties to their relationship with the child. CT Page 16079
The court concludes that it would not be in the child's interest to once again be removed from his setting and the counseling and schooling he has begun to come back to this area immediately. Having said that, the court makes the following orders:
1. The child is to have visitation with the father during the period of December 26, 1999 through January 2, 2000. It is the court's understanding that the child will be residing at the grandparents during this time and for future visitations.
2. The child will also be required to be delivered to this jurisdiction during any other school vacations or breaks in the period between January 2000 and the conclusion of the school year. In this regard, the mother is ordered to provide, within fourteen days, a letter from the school authorities indicating the child's spring class schedule or otherwise establish, to the satisfaction of opposing counsel, the school breaks during this period.
3. The child will also be transported back to this jurisdiction one weekend a month until the summer vacation break. This shall be either from Friday to Monday evening or Thursday through Sunday.
4. The child will spend ten days after the commencement of the summer vacation with the mother and will be transported back to this jurisdiction for the rest of the summer. Subject to paragraph 5, infra, the child shall be returned to Missouri fourteen days before school is to begin again in the fall of 2000.
5. Notwithstanding any of the foregoing provisions, the court will conduct a complete de novo revaluation of its orders on receipt of the social studies report. The court, even if said report is not ready by June 30, 2000, will hold a new hearing on this matter no later than June 30, 2000, but after the conclusion of the child's spring term, to determine whether the child shall continue to remain out of state.
6. While the child is in Missouri he is allowed to have phone contact with the father and the grandparents Sunday and Wednesday evenings at a mutually agreed time.
7. The court appoints an attorney to represent the child. CT Page 16080
Corradino, J.